55c-h

RECEIVED
JUL 23 2020
Filing Window

ORIGINAL
FILED
Superior Court of California
County of Los Angeles

JUL 23 2020

Sherri R. Carter, Executive Officer/Clerk of Court
By_____ Deputy
Kristina Vargas

1   JOHNSON FISTEL, LLP
    Frank J. Johnson (SBN 174882)
2   FrankJ@johnsonfistel.com
    Chase M. Stern (SBN 290540)
3   ChaseS@johnsonfistel.com
    655 West Broadway, Suite 1400
4   San Diego, CA 92101
    Telephone: (619) 230-0063
5   Facsimile: (619) 255-1856

6   *Counsel for Plaintiff*

7

8           SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                      COUNTY OF LOS ANGELES

10  MICHAEL VANBECELAERE, on behalf of all ) Case No.  **20STCV28066**
    others similarly situated,              )
11                                          ) **CLASS ACTION COMPLAINT FOR**
                       Plaintiff,           ) **VIOLATIONS OF THE FEDERAL**
12                                          ) **SECURITIES LAWS**
          vs.                               )
13                                          ) **CLASS ACTION**
    YAYYO, INC, RAMY EL-BATRAWI,            )
14  JONATHAN ROSEN, KEVIN PICKARD,          ) **JURY TRIAL DEMANDED**
    HARBANT S. SIDHU, JEFFREY GUZY,         )
15  CHRISTOPHER MIGLINO, PAUL RICHTER, )
    AEGIS CAPITAL CORP., WESTPARK           )
16  CAPITAL, INC. and DOES 1-25 inclusive   )
    (whose true names are unknown),         )
17                                          )
                       Defendants,          )
18                                          )
                                            )
19                                          )
                                            )
20

21

22

23

24

25

26

27

28

1    Plaintiff Michael Vanbecelaere ("Plaintiff"), individually and on behalf of all others similarly

2  situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the

3  following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon

4  information and belief as to all other matters based on the investigation conducted by and through

5  Plaintiff's attorneys, which included, among other things, a review of YayYo, Inc.'s ("YayYo" or the

6  "Company") press releases, Securities and Exchange Commission ("SEC") filings, analyst reports,

7  media reports, and other publicly disclosed reports and information about defendants, as well as the

8  pleadings filed in the various legal actions involving YayYo detailed herein.  Plaintiff believes that

9  substantial evidentiary support will exist for the allegations set forth herein after a reasonable

10  opportunity for discovery.

11                              **NATURE OF THE ACTION**

12    1.    This is a securities class action on behalf of all purchasers of the common stock of

13  YayYo pursuant to the Registration Statement and Prospectus issued in connection with YayYo's

14  November 14, 2019 initial public stock offering (the "IPO"), seeking to pursue strict liability remedies

15  under the Securities Act of 1933 (the "1933 Act").

16                                      **PARTIES**

17    2.    Plaintiff Michael Vanbecelaere purchased YayYo common stock traceable to the IPO

18  and was damaged thereby.

19    3.    Defendant YayYo is a Beverly Hills, California-based company that claimed at the

20  time of its IPO to be engaged in "bridg[ing] the gap between rideshare drivers needing a suitable

21  vehicle and rideshare companies that depend on attracting and keeping drivers with quality vehicles,"

22  then claiming that "YayYo uniquely supports drivers in both the higher and lower economic

23  categories with innovative policies and programs" and that YayYo then "[sought] to become the

24  preeminent provider of rental vehicles to drivers in the ever-expanding ridesharing economy."

25    4.    Defendant Ramy El-Batrawi ("El-Batrawi") founded YayYo and served as its Chief

26  Executive Officer ("CEO") from the inception of the Company until October 4, 2018, then as Acting

27  CEO from November 17, 2018 to February 1, 2019, and a member of the YayYo Board of Directors

28  (the "Board") between November 2016 and September 2019.  Due to his checkered past, at the

CLASS ACTION COMPLAINT

1   insistence of the NASDAQ Defendant El-Batrawi resigned all positions at YayYo in September 2019

2   so that the Company could be taken public.  On January 26, 2020, Defendant El-Batrawi purports to

3   have been reappointed CEO of YayYo and as a member of its Board.

4       5.      Defendant Jonathan Rosen ("Rosen") was at the time of the time of the IPO YayYo's

5   CEO, having assumed that roll in February 2019 in preparation for the IPO.

6       6.      Defendant Kevin F. Pickard ("Pickard") was at the time of the IPO YayYo's Chief

7   Financial Officer, Secretary, and a member of its Board.

8       7.      Defendants Jeffrey J. Guzy ("Guzy"), Christopher Miglino ("Miglino"), Harbant S.

9   Sidhu ("Sidhu") and Paul Richter ("Richter") were at the time of the IPO members of the YayYo

10  Board.

11      8.      The defendants referenced above in ¶¶ 6-9 are referred to herein as the "Individual

12  Defendants."  Defendants Rosen, Pickard, Guzy, and Sidhu each signed the Registration Statement

13  (defined below).  The defendants referenced above in ¶¶ 6-8 were the executives of YayYo at the

14  time of the IPO, participated in the roadshow to market the IPO with the Underwriter Defendants,

15  and are sometimes referred to herein as the "Executive Defendants."

16      9.      Defendants Westpark Capital, Inc., based in Los Angeles, California ("Westpark"),

17  and Aegis Capital Corporation, based in New York, New York ("Aegis") are investment banking

18  firms that acted as underwriters for the IPO, helping to draft and disseminate the offering documents

19  (the "Underwriter Defendants").  Pursuant to the 1933 Act, the Underwriter Defendants are liable for

20  the statements in the Registration Statement as follows:

21          (a)     The Underwriter Defendants are investment banking houses which specialize,

22              inter alia, in underwriting public offerings of securities.  They served as the underwriters of

23              the IPO and shared $840,000 in fees collectively.  The Underwriter Defendants determined

24              that in return for their share of the IPO proceeds, they were willing to merchandize YayYo

25              stock in the IPO.  The Underwriter Defendants arranged a multi-city roadshow prior to the

26              IPO during which they and the Executive Defendants met with potential investors and

27              presented highly favorable information about the Company, its operation, and its financial

28              prospects.

CLASS ACTION COMPLAINT

(b)    Representatives of the Underwriter Defendants also assisted YayYo and the Individual Defendants in planning the IPO, and purportedly conducted an adequate and reasonable investigation into the business and operations of YayYo, an undertaking known as a "due diligence" investigation.    The due diligence investigation was required of the Underwriter Defendants in order to engage in the IPO.   During the course of their "due diligence," the Underwriter Defendants had continual access to confidential corporate information concerning YayYo's operations and financial prospects.

(c)    In addition to availing themselves of virtually unbridled access to internal corporate documents, agents of the Underwriter Defendants, including their counsel, met with YayYo's management and top executives and engaged in "drafting sessions" during at least May 2019.  During these sessions, understandings were reached as to: (i) the strategy to best accomplish the IPO; (ii) the terms of the IPO, including the price at which YayYo stock would be sold; (iii) the language to be used in the Registration Statement; (iv) what disclosures about YayYo would be made in the Registration Statement; and (v) what responses would be made to the SEC in connection with its review of the Registration Statement.  As a result of those constant contacts and communications between the Underwriter Defendants' representatives and YayYo's management and top executives, the Underwriter Defendants knew, or should have known, of YayYo's existing problems as detailed herein.

(d)    The Underwriter Defendants caused the Registration Statement to be filed with the SEC and declared effective in connection with offers and sales thereof, including to Plaintiff and the Class.

10.    The true names and capacities of defendants sued herein under California Code of Civil Procedure § 474 as Does 1 through 25, inclusive, are presently not known to Plaintiff, who therefore sues these defendants by such fictitious names.  Plaintiff will seek to amend this Complaint and include these Doe defendants' true names and capacities when they are ascertained.  Each of the fictitiously named defendants is responsible in some manner for the conduct alleged herein and for the injuries suffered by the Company as a result of defendants' wanton and illegal conduct.

CLASS ACTION COMPLAINT

**JURISDICTION AND VENUE**

11.     The claims alleged herein arise under §§ 11 and 15 of the 1933 Act, 15 U.S.C. §§ 77k, 77l(a)(2) and 77o.  Jurisdiction is conferred by § 22 of the 1933 Act and venue is proper pursuant to § 22 of the 1933 Act.  This case is not subject to removal to federal court.

12.     The violations of law complained of herein occurred in this State and in large part this County, including the dissemination of materially false and misleading statements complained of herein into this State and in this County.  YayYo is headquartered in Beverly Hills, California and Individual Defendants El-Batrawi, Rosen, Sidhu, and Miglino are, upon information and belief, citizens of California and residents of the counties of Los Angeles, Orange, Santa Clarita, and Los Angeles, respectively.  Each of the Underwriter Defendants (defined below) is either headquartered in Los Angeles County or maintains substantial and continuous contacts with California by conducting significant investment banking operations in Los Angeles County and throughout California.

**SUBSTANTIVE ALLEGATIONS**[1]

13.     On or about June 21, 2016, Defendant El-Batrawi incorporated YayYo in Delaware. The Company then rented cars to Uber and Lyft drivers.

14.     Defendant El-Batrawi has a checkered past.  On April 13, 2006, Defendant El-Batrawi was named, along with other officers, directors, and/or associates of Genesis Intermedia, Inc., as defendants in a SEC enforcement action.  In the SEC's complaint filed in *SEC v. Ramy El-Batrawi, et al.*, United States District Court for the Central District of California, Case No. 2:06-cv-02247-CAS-VBK, the SEC charged Defendant El-Batrawi with violations of Section 17(a) of the Securities Act and Section 10(b) and Rule 10b-5 of the Securities and Exchange Act of 1934, in connection with a stock loan and manipulation scheme.  The SEC enforcement action alleged, among other things, that defendants had violated antifraud provisions of federal securities laws by orchestrating a scheme to manipulate the stock price of Genesis Intermedia, Inc., a now-defunct public company that was based in Van Nuys, California.  On April 1, 2010, Defendant El-Batrawi settled the SEC enforcement

---

[1] All emphasis in bold and italics is added, unless otherwise noted.

CLASS ACTION COMPLAINT

1  action by entering into a final judgment by consent with the SEC. In connection with the settlement

2  of the SEC enforcement action charges, the U.S. District Court for the Central District of California

3  entered a consent decree against Defendant El-Batrawi, which, among other things, barred him from

4  acting as an officer or director of a public company for a period of five years following the date of

5  entry of the final judgment by consent.

6       15.    As defendants prepared to take YayYo public in the IPO, given Defendant El-

7  Batrawi's history of securities law violations, the NASDAQ, where defendants intended to list YayYo

8  shares in connection with the IPO, refused to permit a listing of the Company's shares unless

9  Defendant El-Batrawi resigned and relinquished all authority and control over YayYo prior to the

10  effective date of the IPO. Defendant Rosen was hired in February 2019 and by October 2019 had

11  been appointed as CEO of YayYo.

12       16.    Meanwhile, on or about April 30, 2018, YayYo filed with the SEC its initial

13  registration statement on Form S-1 that, after several amendments in response to comments from the

14  SEC, would later be utilized for the IPO (the "Registration Statement"). On or about November 12,

15  2019 the SEC declared the Registration Statement effective and on or about November 14, 2019,

16  Defendant YayYo and the Underwriter Defendants priced the IPO and filed the final Prospectus for

17  the IPO, which forms part of the Registration Statement (collectively, the "Registration Statement").

18       17.    The Registration Statement was negligently prepared and, as a result, contained untrue

19  statements of material facts or omitted to state other facts necessary to make the statements made not

20  misleading, and was not prepared in accordance with the rules and regulations governing its

21  preparation.

22       18.    Concerning Defendant El-Batrawi's ongoing involvement in the affairs of YayYo, the

23  Registration Statement stated in pertinent part that "[o]n February 1, 2019, Mr. El-Batrawi resigned

24  from his position as Acting Chief Executive Officer of the Company upon the appointment of

25  Jonathan Rosen as Chief Executive Officer," and elsewhere that "Mr. El-Batrawi resigned as our

26  director effective as of September 1, 2019."

27

28

CLASS ACTION COMPLAINT

19.     Elsewhere, claiming that Defendant Rosen was truly operating independently as YayYo's CEO and was himself then directing the Company's affairs, the Registration Statement stated in pertinent part:

> We depend on a small number of executive officers and other members of management to work effectively as a team, to execute our business strategy and operating business segments, and to manage employees and consultants. Our success will be dependent on the personal efforts of our Chief Executive Officer, our directors and such other key personnel. Any of our officers or employees can terminate his or her employment relationship at any time, and the loss of the services of such individuals could have a material adverse effect on our business and prospects. *Mr. El-Batrawi, the founder and original Chairman of the Board and original Chief Executive Officer of the Company from its incorporation of the Company, resigned from all positions with the Company as a condition for being approved for listing on The Nasdaq Capital Market.*

20.     Concerning the purported sale of Defendant El-Batrawi's equity ownership in YayYo prior to the IPO, the Registration Statement stated in pertinent part:

> As a condition to approving the Company's common stock for listing on The Nasdaq Capital Market, X, LLC, an entity that is wholly-owned and controlled by Ramy El-Batrawi, our founder and former Chief Executive Officer and former director, agreed to sell 12,525,000 of its 15,425,000 shares of common stock. *The 12,525,000 shares (the "Private Shares") were sold* pursuant to an exemption from registration under the Securities Act to four existing Company shareholders who qualify as accredited investors (as that term is defined in Securities Act Rule 501(a)). *The Private Shares were sold at $3.00 per share* in exchange for non-recourse, non-interest-bearing promissory notes with maturities ranging from one year to eighteen months. *As a result of the sale, X, LLC's beneficial ownership shall be reduced to 9.9% of the shares outstanding after the completion of this Offering.* We will not receive any proceeds from the sale of the Private Shares. If the offering contemplated by this registration statement is not consummated by January 31, 2020, the parties have agreed to unwind the sale of the Private Shares transaction in compliance with applicable law. Mr. El-Batrawi has also entered into a Voting Trust Agreement (the "Trust") pursuant to which the voting power of all of his remaining 2,900,000 shares of common stock will be controlled by a trustee who will use the voting power of the common stock held in the Trust to vote on all matters presented for a vote of stockholders in the same proportion that the shares of common stock not subject to the Trust voted on such matters.

> \*          \*          \*

> Mr. El-Batrawi has entered into a Voting Trust Agreement (the "Trust") pursuant to which the voting power of all of his outstanding common stock will be controlled by a trustee who will use the voting power of the common stock held in the Trust to vote on all matters presented for a vote of stockholders in the same proportion that the shares of common stock not subject to the Trust voted on such matters. The Trust shall be irrevocable, and shall terminate upon the earlier of (a) the written agreement of the Company, the trustee and a duly authorized representative of Nasdaq, or (b) the date upon which the Company is not listed on a security exchange controlled by Nasdaq.

7

*As of the date of this prospectus, the Gray Mars Venus Trust, of which John Gray is the beneficial owner, owns approximately 38.5% of our outstanding shares of common stock.*

\*          \*          \*

*In addition to the stock controlled by John Gray, five other individuals or entities will own 39.3% of our common stock after the completion of this offering. . . .*

\*          \*          \*

**Voting Trust**

Mr. El-Batrawi has entered into a Voting Trust Agreement pursuant to which the voting power of all of his outstanding common stock will be controlled by a trustee who will use the voting power of the common stock held in the Trust to vote on all matters, other than certain extraordinary matters, presented for a vote of stockholders in the same proportion that the shares of common stock not subject to the Trust voted on such matters. Mr. El-Batrawi's entrance into the Voting Trust Agreement is a condition for the Company's approval for listing on The Nasdaq Capital Market.

*The Trust shall be irrevocable, and shall terminate upon the earlier of (a) the written agreement of the Company, the trustee and a duly authorized representative of Nasdaq, or (b) the date upon which the Company is not listed on a security exchange controlled by Nasdaq.*

The trustee, initially one of our directors, Harbant S. Sidhu, shall have discretion to vote the Trust's shares on all extraordinary matters which shall include any merger, consolidation, business combination, share exchange, restructuring, recapitalization or acquisition involving the Company or any similar transaction or the sale, lease, exchange, pledge, mortgage or transfer of all or a material portion of the Company's assets.

\*          \*          \*

To the best of our knowledge, except as otherwise indicated, *each of the persons named in the table has sole voting and investment power with respect to the shares of our common stock beneficially owned by such person*, except to the extent such power may be shared with a spouse. To our knowledge, none of the shares listed below are held under a voting trust or similar agreement, except as noted. To our knowledge, there is no arrangement, including any pledge by any person of securities of the Company, the operation of which may at a subsequent date result in a change in control of the Company.

| Name and Address of Beneficial Owner | Title | Beneficially Owned | Percent of Class Before Offering | Percent of Class After Offering |
|---|---|---|---|---|
| **Officers and Directors** [1] | | | | |
| Jonathan Rosen | Chief Executive Officer | — | — | — |
| Kevin F. Pickard [2] | Chief Financial Officer and Director | 300,000 | 1.1% | 1.0% |

8

| | | | | |
|---|---|---|---|---|
| Laurie DiGiovanni | Chief Operating Officer | — | — | — |
| Jeffrey J. Guzy | Director | — | — | — |
| Christopher Miglino | Director | — | — | — |
| Harbant S. Sidhu | Director | — | — | — |
| Paul Richter | Director | — | — | — |
| | | | | |
| **Officers and Directors as a Group (total of 7 persons)** | | **300,000** | **1.1%** | **1.0%** |
| **5% Stockholders** | | | | |
| X, LLC [3][5] | | 2,900,000 | 10.8% | 9.9% |
| Gray Mars Venus Trust, Arizona 2015 [4][5] | | 10,325,000 | 38.5% | 35.1% |
| Bellridge Capital, L.P. [5][6] | | 2,400,000 | 8.5% | 7.87% |
| David Haley [5][7] | | 2,844,945 | 10.6% | 9.7% |
| James Malackowiski [5][8] | | 2,758,824 | 10.3% | 9.4% |
| John O'Hurley [5][9] | | 2,018,750 | 7.5% | 6.9% |
| Acuitas Group Holdings, LLC [5][10] | | 1,654,412 | 6.2% | 5.6% |

\*      \*      \*

### Sale of Founder's Shares and Voting Trust

As a condition to approving the Company's common stock for listing on The Nasdaq Capital Market, X, LLC, an entity that is wholly-owned and controlled by Ramy El-Batrawi, our founder and former Chief Executive Officer and former director, agreed to sell 12,525,000 of its 15,425,000 shares of common stock. *The 12,525,000 shares (the "Private Shares") were sold* pursuant to an exemption from registration to four existing Company shareholders who qualify as accredited investors (as that term is defined in Securities Act Rule 501(a)). *The Private Shares were sold at $3.00 per share* in exchange for non-recourse, non-interest-bearing promissory notes with maturities ranging from one year to eighteen months. *As a result of the sale, X, LLC's beneficial ownership shall be reduced to 9.9% of the shares outstanding after the completion of this Offering.* We will not receive any proceeds from the sale of the Private Shares. *If the offering contemplated by this registration statement is not consummated by January 31, 2020, the parties have agreed to unwind the sale of the Private Shares transaction in compliance with applicable law.* Mr. El-Batrawi has also entered into a Voting Trust Agreement (the "Trust") pursuant to which the voting power of all of his remaining 2,900,000 shares of common stock will be controlled by a trustee who will use the voting power of the common stock held in the Trust to vote on all matters presented for a vote of stockholders in the same proportion that the shares of common stock not subject to the Trust voted on such matters.

21.      Concerning the "Use of Proceeds" from the IPO, Registration Statement stated in pertinent part:

*We currently intend to use the net proceeds to us from this primary offering to purchase vehicles to add to our fleet of passenger vehicles made available for rent*

9

*through our wholly-owned subsidiary, Distinct Cars, and for general corporate purposes, including working capital and sales and marketing activities.*

\*        \*        \*

The principal purposes of this primary offering are to increase our capitalization and financial flexibility, increase our visibility in the marketplace and create a public market for our common stock. As of the date of this prospectus, we cannot specify with certainty all of the particular uses for the net proceeds to us from this primary offering. However, we currently intend to use the net proceeds to us from this primary offering to add to our fleet of passenger vehicles made available for rent through the Company's wholly-owned subsidiary, Distinct Cars, and for general corporate purposes, including working capital, sales and marketing activities. We may also use a portion of the net proceeds for the acquisition of, or investment in, technologies, solutions or businesses that complement our business, although we have no present commitments or agreements to enter into any acquisitions or investments.

\*        \*        \*

The table below sets forth the manner in which we expect to use the net proceeds we receive from this primary offering. All amounts included in the table below are estimates.

| Description | Amount |
|---|---|
| Purchase of Passenger Vehicles Made Available for Rent | $5,000,000 |
| Repayment of Notes Payable | $2,400,000 |
| Sales and Marketing | $700,000 |
| Working Capital and General Corporate Purposes | $693,800 |
| Total | $8,793,800 |

22.    Concerning Anthony Davis, a former President, CEO and Director of YayYo, the Registration Statement stated in pertinent part:

- Anthony Davis was the "Former President, Chief Executive Officer, Director" of YayYo, having served in those capacities between 2017 and 2018 and had been paid $20,000 in salary;

- That "[o]n December 1, 2016, . . . Mr. Davis . . . received non-qualified stock options expiring on December 31, 2018, entitling [him] to purchase 100,000 shares of Company common stock at an exercise price of $1.00 per share at any time on or after June 1, 2017"; and

- That "[o]n November 29, 2016, the Company and Mr. Davis, a former executive officer of the Company, entered into an offer of employment agreement with the Company setting forth an initial base salary for Mr. Davis's first three months of service and performance under his term of employment with the Company. As set forth under the employment offer, Mr. Davis was entitled to receive (i) $15,000 for his service in the month of

CLASS ACTION COMPLAINT

1    December 2016, (ii) $10,000 for service performed during the month of
     January, 2017 and an additional $10,000 for service performed by Mr. Davis
2    during the month of February 2017."

3    23.    Concerning YayYo's relationship with a social media company called Social Reality,

4 and that company's provision of social media services to YayYo prior to the IPO, while the

5 Registration Statement did disclose that Defendant Miglino was the founder and CEO of Social

6 Media, rather than disclosing that YayYo then owed Social Media $426,286 for pre-IPO services at

7 the time of its IPO, the Registration Statement stated that "[d]uring the year ended December 31,

8 2018, the Company incurred $334,471 for advertising and digital media services from Social Reality"

9 and that "[a]t December 31, 2018, the Company had an amount due of $334,471 to Social Reality."

10 In addition to failing to disclose the full amount owed to Social Reality at the time of the IPO, the

11 Registration Statement failed to disclose that the debt was then overdue and that YayYo had been

12 delaying making the payment while it carried out its IPO.

13    24.    The statements referenced above in ¶¶ 18-23 were each materially false and

14 misleading because they failed to disclose and misrepresented the following adverse facts that existed

15 at the time of the IPO:

16          (a)     Defendant El-Batrawi continued, directly and/or indirectly, to exercise

17          supervision, authority, and control over YayYo, and was intimately involved, on a day-to-day

18          basis, with the business, operations, and finances of the Company, including assisting the

19          Underwriter Defendants in marketing YayYo's IPO from Defendant Westpark's offices in

20          Los Angeles;

21          (b)     Defendant El-Batrawi had never sold the 12,525,000 "Private Shares" and

22          continued to own a controlling interest in YayYo despite the NASDAQ's insistence that he

23          retain less than a 10% equity ownership interest in connection with the listing agreement;

24          (c)     Defendants had promised certain creditors of YayYo that in exchange with

25          their agreeing to purchase shares in the IPO (in order to permit the Underwriter Defendants to

26          close the IPO), YayYo would repurchase those shares from them after the IPO using proceeds

27          from the IPO;

28

11

CLASS ACTION COMPLAINT

(d)     Defendants intended to repurchase shares purchased by creditors of YayYo in the IPO using IPO proceeds;

(e)     YayYo owed former President, CEO, and Director Anthony Davis a half of million dollars at the time of the IPO; and

(f)     YayYo owed Social Media $426,286 in unpaid social media costs, most of which was more than a year overdue and payment had been delayed while YayYo attempted to complete the IPO.

25.     The IPO was successful for the Company and the Underwriters, who sold 2,625,000 shares of YayYo common stock to the public at $4 per share, raising approximately $10.5 million in gross proceeds for the Company ($9.66 million in aggregate net proceeds from the IPO after deducting underwriting discount, commissions and offering costs).

26.     On January 6, 2020, YayYo suddenly announced the appointment of Boyd Bishop as President of YayYo effective January 6, 2020.

27.     On January 13, 2020, YayYo filed a Current Report with the SEC on Form 8-K announcing that "[o]n January 10, 2020, YayYo . . . entered into an Executive Employment Agreement . . . with the Company's Chief Executive Officer, Jonathan Rosen, pursuant to which Mr. Rosen will continue to serve as the Company's Chief Executive Officer for one year or until terminated in accordance with the Agreement."

28.     On January 24, 2020, YayYo filed an action for Declaratory Judgement and Permanent Injunction against Defendant El-Batrawi in the Superior Court of the State of California, County of Los Angeles, Case No. 20STCP00309, alleging in pertinent part:

Despite leaving the Company following concerns from NASDAQ regarding his involvement in the day-to-day operations of Yay Yo in September 2019, Defendant has engaged in a continuous course of actions misrepresenting himself as affiliated with, speaking on behalf of, and authorized or empowered by Yay Yo. In so doing, Defendant has purported to bind the Company to contracts, direct its employees, change its website, and event to attempted to sell the Company to its competitors.

29.     In a declaration filed with YayYo's complaint and in support of a temporary restraining order, Defendant Rosen testified that despite having promised in September 2019 in connection with his resignation to have "*no formal or informal affiliation between the Company*

12

1  *and [El-Batrawi]*, expect [sic] for [his minority ownership (less than 10%) in the Company"

2  (emphasis in original), "Defendant El-Batrawi [had] continue[d] to operate and hold himself out as

3  if a director or officer of Yay Yo, or as an otherwise authorized representative of the same."

4  Defendant Rosen further testified that despite the Registration Statement having expressly stated that

5  Defendant El-Batrawi had already sold the 12,525,000 shares of YayYo prior to the IPO, in reality

6  "Defendant El-Batrawi ha[d] failed and/or refused to sell his shares of stock in the Company. . . ."

7  Defendant Rosen further admitted this had all been going on since September 2019, well before the

8  IPO, including testifying in pertinent part that "[s]ince [September 2019], Defendant El-Batrawi has

9  engaged in a continuous and escalating pattern of behavior destructive to Yay Yo. . . ." Defendant

10  Rosen testified that Defendant El-Batrawi's misconduct between September 2019 and January 2020

11  had included, among other things, contacting competitors, suppliers, and vendors of YayYo and

12  negotiating with them as a representative of YayYo; meeting with financiers and investment firms

13  about investing in YayYo and claiming to represent YayYo; hiring a public relations firm for YayYo

14  and producing and airing commercials for YayYo on the Fox Business Channel; attempting to hire

15  two marketing firms for YayYo; and directing that changes be made to YayYo's website.

16      30.      On January 27, 2020, YayYo filed a Current Report on Form 8-K with the SEC

17  announcing that Defendants Guzy, Miglino, and Richter had been replaced as Board members and

18  that Defendant Rosen was no longer the CEO of YayYo. The Current Report stated in pertinent part:

19      By the written consent of the holders of more than a majority of the shares of YayYo,
        Inc. (the "Company") then entitled to vote at an election of directors, Messrs. Jeffrey
20      J. Guzy, Christopher Miglino and Paul Richter were removed as directors of the
        Company, effective January 22, 2020. On January 24, 2020, the remaining directors
21      of the Company elected Douglas M. Mox, John P. O'Neill and Stephen M. Sanchez
        as directors to fill such vacancies, each to hold office until the earlier of the expiration
22      of the term of office of the director whom he has replaced, a successor is duly elected
        and qualified or the earlier of such director's death, resignation, disqualification or
23      removal. Stephen M. Sanchez was elected as the Chairman of the Board of Directors
        (the "Board").
24

                              *         *         *

25

26      In addition to the above, on January 26, 2020, Jonathan Rosen resigned from his
        position as the Company's Chief Executive Officer. Mr. Rosen informed the Board
        that his resignation was for "Good Reason," as that term is defined in Mr. Rosen's
27      employment agreement with the Company dated January 10, 2020. The Company
        disagrees with Mr. Rosen's characterization of the circumstances surrounding his

28

13

CLASS ACTION COMPLAINT

1 | resignation and does not believe that "Good Reason" exists for Mr. Rosen's resignation.

2

3 | 31.     On February 10, 2020, YayYo suddenly issued a press release disclosing that the new

4 | Board had determined to delist YayYo common stock from the NASDAQ to avoid the NASDAQ

5 | listing requirements, stating in pertinent part:

6 | BEVERLY HILLS, Calif., Feb. 10, 2020 (GLOBE NEWSWIRE) — YayYo . . .
today announced its intention to voluntarily delist its common stock from the

7 | NASDAQ Stock Market ("NASDAQ") effective on February 20, 2020. The
Company expects that its common stock will be approved for quotation on the

8 | OTCQB from and after that date. The Company has elected to effect the voluntary
delisting of its common stock after discussions with NASDAQ's staff and based on

9 | the determination of the Company's board of directors that voluntarily delisting the
common stock from the NASDAQ is in the best interests of the Company and its

10 | stockholders. Nasdaq has advised the Company that it believes that the Company has
failed the conditions for continued listing of its common stock set forth in Listing

11 | Rule 5250(a). The voluntary delisting will permit the Company to operate its business
free from restrictions imposed by NASDAQ rules and the conditions applicable to

12 | the listing of the Company's common stock on the NASDAQ.

13 | The Company has notified NASDAQ of its intent to voluntarily delist its common
stock from the NASDAQ. The Company currently anticipates that it will file with the

14 | Securities and Exchange Commission a Form 25 relating to the delisting of its
common stock on or about February 20, 2020 and expects the delisting of its common

15 | stock to be effective ten days thereafter. The purpose of the Form 25 filing is to effect
the voluntary delisting from the NASDAQ of the Company's outstanding common

16 | stock. The Company does not expect the delisting to have any adverse effects on its
business operations.

17

18 | 32.     On February 11, 2020, social media company Social Reality filed a collection action

19 | against YayYo in the Superior Court of the State of California for the County of Los Angeles, Case

20 | No. 20STVV05559, alleging that Social Reality had provided media services to the Company dating

21 | back to 2018 and claiming breach of contract and related causes of action. Social Reality alleged that

22 | YayYo then owed it $645,286, including $426,286 for services rendered prior to time of the IPO. In

23 | its complaint, Social Reality expressly alleged that YayYo had claimed to be "unable to pay" for the

24 | services prior to the IPO "apparently due to a delay in its [IPO]." Though the invoices for the services

25 | attached to the complaint filed by Social Reality were signed by Defendant El-Batrawi, an email

26 | attached to the complaint dated January 24, 2020 from Defendant Rosen stated that other than $50,000

27 | that had apparently been paid to Social Reality from the IPO proceeds on January 23, 2020, YayYo

28 | would be unable to pay the rest of the outstanding bill until it obtained additional outside financing.

CLASS ACTION COMPLAINT

33.     On March 3, 2020, YayYo filed a Current Report with the SEC disclosing that "[o]n February 28, 2020, the Board of Directors . . . of YayYo . . . appointed Ramy El-Batrawi as the Company's Chief Executive Officer and as a member of the Board, effective immediately."  The Form 8-K further disclosed that "[b]eginning on February 1, 2019, the Company entered into a consulting agreement with Mr. El-Batrawi and paid $167,000 under the consulting agreement," but that "[t]he consulting agreement was terminated effective September 1, 2019."

34.     On March 3, 2020, former YayYo President, CEO, and Director Anthony Davis filed a Complaint for Damages, Declaratory Relief, Failure to Pay Wages in Violation of Labor Code 201, *et. seq.*, Violation of California's Unfair Competition Laws (Business & Professions Code § 17200, *et seq.*), Breach of Contract, Intentional Misrepresentation and Fraud, and Promissory Fraud against YayYo, alleging in pertinent part:

> Plaintiff Anthony Davis is an experienced, c-suite level executive that agreed to join Yayyo, a ridesharing startup company, as its CEO, for a salary well below his market rate in exchange for the written promise of stock options made by Yayyo founder and then CEO Ramy El-Batrawi.
>
> After only five (5) months of service and in accordance with his responsibilities under an employment agreement, Plaintiff determined that Ramy El-Batrawi could not be trusted because he regularly ignored legal counsel regarding SEC matters and flouted Board protocols and industry norms for corporate compliance. Specifically, El-Batrawi filed fraudulent and materially misleading documents with the SEC that Yayyo continues to use to deny Plaintiff the compensation he is owed.
>
> Instead of remaining in an untenable position due to El-Batrawi's illegal and fraudulent conduct, Plaintiff negotiated a separation written agreement through a consulting agreement that described the agreed upon compensation owed to Plaintiff, including specific language regarding payment from the stock options and other cash owed. To date, despite numerous good faith attempts to be paid pursuant to the written agreements, Yayyo refuses to honor its obligations thereunder.
>
> *            *            *
>
> Based on the written agreements, Yayyo and El-Batrawi caused damages to Davis in the amount of at least $454,086.39 for losses related to cash compensation, expenses and the stock options value, plus attorney's fees and costs. Plaintiff also seeks injunctive relief requiring Yayyo to amend the SEC filings (Form S-1/A) so as to not mislead the public

35.     On or about April 13, 2020, the Company filed a Current Report with the SEC on Form 8-K disclosing that as of April 2, 2020 YayYo had provided a "secured position" on "all assets" of YAYO and its subsidiaries to X, LLC, an entity owned and/or controlled by Defendant El-Batrawi,

15

CLASS ACTION COMPLAINT

1  for a loan of a mere $150,000, which debt is due and payable in thirty (30) days thereafter, and

2  demonstrating the virtually complete dissipation of the Proceeds of the Offering by the Company.

3      36.     On or about April 28, 2020, an entity named FirstFire Global Opportunities Fund, LLC

4  ("FirstFire") filed a Complaint and Demand for Jury Trials against the Underwriter Defendants in the

5  U.S. District Court for the Southern District of New York, Case No. 1:20-cv-03327.  Among other

6  things, FirstFire alleges that the Registration Statement used to conduct the IPO was materially false

7  and misleading because it: (i) concealed Defendant El-Batrawi's ongoing control over the company

8  and its IPO process and fraudulently using IPO proceeds to immediately pay back investors who

9  fronted funds to close the IPO.  FirstFire further alleges that when the Underwriter Defendants were

10  unable to raise the full $10 million required by NASDAQ to close the IPO, Defendant El-Batrawi

11  fabricated a $1.2 million commitment purportedly from a trust, which turned out to be a lie.  FirstFire

12  further alleges that the Underwriter Defendants and Defendant El-Batrawi solicited creditors and

13  shareholders to invest more money to close the IPO, and "sought to sweeten the attraction" by

14  agreeing that YayYo would "immediately" pay them back from the IPO proceeds, an "unlawful act"

15  that would "materially misrepresent the offering and fraudulently mislead investors," according to

16  FirstFire's complaint.  FirstFire further alleges that the Underwriter Defendants told investors that

17  YayYo planned to use the IPO proceeds to purchase vehicles, as well as for general corporate

18  purposes, including working capital and sales and marketing activities, but that in reality YayYo had

19  no intention to do so.

20      37.     Following its delisting, as of the filing of this Complaint, the price of YayYo common

21  stock has plummeted and it now trades at approximately 30¢ per share, a ***nearly 100% decline*** from

22  the price the stock was offered at in the IPO.

23                        **CLASS ACTION ALLEGATIONS**

24      38.     Plaintiff brings this action as a class action on behalf of a class consisting of all those

25  who purchased YayYo common stock pursuant to the Registration Statement issued in connection

26  with the IPO (the "Class").  Excluded from the Class are Defendants and their families, the officers

27  and directors and affiliates of Defendants, at all relevant times, members of their immediate families

28

16

CLASS ACTION COMPLAINT

1 | and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have

2 | or had a controlling interest.

3 |      39.     The members of the Class are so numerous that joinder of all members is

4 | impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can

5 | only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds of

6 | members in the proposed Class. Record owners and other members of the Class may be identified

7 | from records maintained by YayYo or its transfer agent and may be notified of the pendency of this

8 | action by mail, using the form of notice similar to that customarily used in securities class actions.

9 |      40.     Plaintiff's claims are typical of the claims of the members of the Class as all members

10 | of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is

11 | complained of herein.

12 |      41.     Plaintiff will fairly and adequately protect the interests of the members of the Class

13 | and has retained counsel competent and experienced in class and securities litigation.

14 |      42.     Common questions of law and fact exist as to all members of the Class and

15 | predominate over any questions solely affecting individual members of the Class. Among the

16 | questions of law and fact common to the Class are:

17 |      (a)     whether Defendants violated the 1933 Act;

18 |      (b)     whether statements made by Defendants to the investing public in the

19 |      Registration Statement and Prospectus misrepresented material facts about the business and

20 |      operations of YayYo; and

21 |      (c)     to what extent the members of the Class have sustained damages and the proper

22 |      measure of damages.

23 |      43.     A class action is superior to all other available methods for the fair and efficient

24 | adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the

25 | damages suffered by individual Class members may be relatively small, the expense and burden of

26 | individual litigation make it impossible for members of the Class to individually redress the wrongs

27 | done to them. There will be no difficulty in the management of this action as a class action.

28 |

CLASS ACTION COMPLAINT

## COUNT I

### Violations of §11 of the 1933 Act by Plaintiff
### Against All Defendants (Except El-Batrawi)

44.     Plaintiff hereby incorporates by reference the allegations in the preceding paragraphs of this complaint as though fully set forth herein.

45.     This Count is brought pursuant to § 11 of the 1933 Act, 15 U.S.C. § 77k, on behalf of the Class, against all Defendants except Defendant El-Batrawi.

46.     The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

47.     YayYo is strictly liable to Plaintiff and the Class for the misstatements and omissions.

48.     None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

49.     By reason of the conduct herein alleged, each Defendant named in this Count violated, and/or controlled a person who violated, § 11 of the 1933 Act.

50.     Plaintiff acquired YayYo common stock traceable to the IPO.

51.     Plaintiff and the Class have sustained damages.  The value of YayYo common stock has declined substantially subsequent to and due to Defendants' violations.

52.     At the time of their purchases of YayYo common stock, Plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to the disclosures herein.  Less than one year has elapsed from the time that Plaintiff discovered or reasonably could have discovered the facts upon which this Complaint is based to the time that Plaintiff commenced this action.  Less than three years has elapsed between the time that the securities upon which this Count is brought were offered to the public and the time Plaintiff commenced this action.

CLASS ACTION COMPLAINT

1

## COUNT II

2

### For Violation of §15 of the 1933 Act by Plaintiff
### Against the Company and the Individual Defendants

3

4       53.    Plaintiff hereby incorporates by reference the allegations in the preceding paragraphs

5   of this complaint as though fully set forth herein.

6       54.    This Count is brought pursuant to § 15 of the 1933 Act against the Company and the

7   Individual Defendants.

8       55.    The Individual Defendants each were control persons of YayYo by virtue of their

9   positions as directors and/or senior officers of YayYo, or in the case of Defendant El-Batrawi, as a

10   behind the scenes orchestrator.  The Individual Defendants each had a series of direct and/or indirect

11   business and/or personal relationships with other directors and/or officers and/or major shareholders

12   of YayYo.  The Company controlled the Individual Defendants and all of YayYo's employees.

13       56.    The Individual Defendants each were culpable participants in the violations of § 11 of

14   the 1933 Act alleged in the Count above, based on their having signed or authorized the signing of

15   the Registration Statement and having otherwise participated in the process which allowed the IPO

16   to be successfully completed.

17   ## PRAYER FOR RELIEF

18       WHEREFORE, Plaintiff prays for relief and judgment against each Defendant, jointly and

19   severally, as follows:

20       A.    An order certifying the Class and naming Plaintiff as a representative of the Class and

21   Plaintiff's attorneys as counsel for the Class to represent the Class members;

22       B.    Awarding compensatory damages in favor of Plaintiff and the other Class members

23   against all Defendants, jointly and severally, for all damages sustained as a result of Defendants'

24   wrongdoing, in an amount to be proven at trial, including pre- and post-judgment interest thereon;

25       C.    Awarding Plaintiff and the Class reasonable attorneys' fees and expenses and costs of

26   suit as allowable and appropriate;

27       D.    Awarding rescission or a rescissory measure of damages; and

28       E.    Such equitable/injunctive and/or other relief as deemed appropriate by this Court.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED:  July 23, 2020

JOHNSON FISTEL, LLP

FRANK J. JOHNSON

CHASE M. STERN
655 West Broadway, Suite 1400
San Diego, CA  92101
Telephone: (619) 230-0063
Facsimile: (619) 255-1856
FrankJ@johnsonfistel.com
ChaseS@johnsonfistel.com

*Counsel for Plaintiff*

CLASS ACTION COMPLAINT